Filed 3/20/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ASHLEY ELLIS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>U.S. SECURITY ASSOCIATES et al.,<br><br>    Defendants and Respondents. | A136028<br><br>(Solano County<br>Super. Ct. No. FCS038885) |

Appellant Ashley Ellis went to work for respondent U.S. Security Associates (U.S. Security) in September 2009, as a security guard. Quickly promoted, Ellis came under the supervision of Rick Haynes, who began sexually harassing her in August 2010. Employees complained to U.S. Security, and Haynes was counseled, apparently to no avail, and he was terminated in December 2010. Ellis was again promoted, but never to be paid the raise she was promised, and she resigned in January 2011.

In November 2011, Ellis filed a complaint alleging three claims under the Fair Employment and Housing Act (Government Code § 12900 et seq.) and two nonstatutory claims, claims clearly timely under the applicable statutes of limitations. U.S. Security nevertheless moved for judgment on the pleadings, based on Ellis's signed application for employment where she agreed that "any claim or lawsuit . . . must be filed no more than six (6) months after the date of the employment action," and she waives "any statute of limitations to the contrary." In a seven-line order, without discussion or explanation, the trial court granted the motion and dismissed Ellis's complaint, apparently concluding that

1

the shortened limitation provision was enforceable. We conclude otherwise, and reverse, holding that the shortened limitation provision is unreasonable and against public policy.

## BACKGROUND

### The Facts

As indicated, Ellis's complaint was dismissed based on a judgment on the pleadings. Since it was, "We accept, and liberally construe, the truth" of her facts. (*Caldera Pharmaceuticals, Inc. v. Regents of the University of California* (2012) 205 Cal.App.4th 338, 350). Those facts are as follows:

In September 2009, U.S. Security hired Ellis as a security guard, and she began work at a Union Pacific railroad site in Benicia.

In early 2010, Ellis became a field training officer in Benicia, where her direct supervisor was Rick Haynes, who also supervised his wife, Tina. On August 25, 2010, Haynes called Ellis and proposed that she join him and his wife in sexual activities, telling Ellis that he and his wife had an open marriage, and asking whether Ellis "wanted to be his sexual partner." Ellis rejected the proposition. Later that day, Haynes texted Ellis at work, telling her "he wanted to kiss her and he was sorry she did not want to be lovers."

Thereafter, Haynes subjected Ellis to a pattern of offensive and unwanted sexual behavior at work, including: making suggestive sexual comments to her; making comments about her appearance; telling her (and coworkers) about his and his wife's sexual activities; pulling up his pants in front of Ellis to expose the size of his sexual organ; asking her to join him and his wife in sexual activities; and giving her gifts. In addition, Haynes's wife Tina frequently spoke in Ellis's presence of her and Haynes's sexual behavior, commenting about having multiple partners, and describing sexual activities and sexual fantasies.

Sometime prior to September 25, 2010, "multiple . . . female employees" complained to management that Haynes was sexually harassing them at the Benicia worksite, and management required Haynes to participate in a sexual harassment class. Later, in November 2010, a coworker complained to management about Haynes's

2

continued harassing comments.  The complaining worker was put on unpaid leave, and Haynes transferred Ellis to the back gate of the Benicia site, a less desirable location than the front gate where she had been working.

In November 2010, Ellis notified someone at U.S. Security headquarters of Haynes's inappropriate conduct, including his August proposals and text message, and his subsequent harassing conduct.  In December 2010, Haynes was terminated.

Following Haynes's termination, Ellis was promoted to a supervisor position, and promised a raise to $14 per hour.  A U.S. Security employee later told Ellis she would be paid only $11 per hour, and her first paycheck as supervisor was based on a rate of $10.50 per hour.  Ellis attempted to contact management to correct what she believed at the time was a mistake in the rate of compensation.  Ellis received no response and, when her second paycheck as supervisor was at the same hourly rate, she gave her two-week notice.  Her last day of employment was January 13, 2011.

### The Proceedings Below

Ellis had filed a complaint with the California Department of Fair Employment and Housing (DFEH), and on December 14, 2010, she received a right-to-sue letter.

On November 17, 2011, Ellis filed a complaint for damages naming U.S. Security and Haynes.  The complaint alleged five causes of action, styled as follows:  (1) sex discrimination and sexual harassment, in violation of Government Code § 12940[1]; (2) failure to maintain environment free from harassment (§ 12940(k)); (3) retaliation in violation of § 12940(h); (4) intentional infliction of emotional distress; and (5) negligent hiring, supervision, and retention.  The first four causes of action were against both defendants, the fifth against U.S. Security only.

---

[1] All further statutory references are to the Government Code unless otherwise specified.

U.S. Security filed an answer, and then an amended answer, which contained several affirmative defenses, one of which was based on Ellis's failure to bring her lawsuit within six months.[2]

On April 17, 2012, U.S. Security filed a motion for judgment on the pleadings. The motion was accompanied by a request for judicial notice, which sought judicial notice of "Plaintiff's Application for Employment with U.S. Security, dated September 24, 2009 (redacted)." The application was four pages long, and the final page contained the following heading: "IT IS EXTREMELY IMPORTANT THAT YOU CAREFULLY READ THE FOLLOWING." Immediately below was "**CONDITIONS OF EMPLOYMENT**," which set forth four conditions, and below that the application said this: "**STATEMENT OF APPLICANT—READ CAREFULLY BEFORE SIGNING.**" Three paragraphs followed, the last of which read as follows: "I understand, agree and acknowledge that any claim or lawsuit relating to my service with [U.S. Security] must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary."

The basis of U.S. Security's motion was that all of Ellis's claims were time-barred by the six-month limitation provision in the application.

Ellis filed opposition, which did not object to the request for judicial notice or argue any claimed unconscionability in the application. Rather, addressing only the validity of the shortened limitation period, Ellis argued that the court "find that the contract provision at issue is unenforceable as a matter of law."

U.S. Security filed a brief reply, and the matter came on for hearing on May 22, 2012, prior to which the court had apparently issued a tentative ruling requiring

---

[2] Haynes was served with the complaint. The record does not reflect any pleading filed by him, and the brief of U.S. Security represents that Haynes "has not appeared in the action."

appearances.[3]  The hearing was brief indeed, and that same day the court entered a seven-line order that, without discussion, explanation, or citation, granted the motion without leave to amend and ordered Ellis's complaint dismissed.

Ellis filed a timely notice of appeal.

## DISCUSSION

The issue before us is whether the six months limitation provision in the application for employment is enforceable?[4].  We hold it is not, as it is unreasonable and against public policy.

### FEHA, Its Significance, and Its Operation.

California's Fair Employment and Housing Act (FEHA) is an elaborate statutory scheme consisting of more than 80 sections.  (§§ 12900 to 12996).  Section 12920, in Chapter 3 entitled "Findings and Declarations of Policy," declares it the "public policy" of California to "protect and safeguard" the rights of employees against discrimination. Section 12920 also states that "[T]he practice of denying employment opportunity and discriminating in the terms of employment . . . foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interests of employees, employers, and the public in general."  And the section concludes that "[i]t is the purpose of this part to provide effective remedies that will eliminate these discriminatory practices."

FEHA is not just any statutory scheme. As our Supreme Court observed in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 100-101, "[t]here is no question that the statutory rights established by the FEHA are 'for

---

[3] We say apparently based on comments by the court at the hearing.  No tentative ruling is in the record.

[4] No issue was raised below that judicial notice of the application was improper. (See *Gould v. Maryland Sound Industries* (1995) 31 Cal.App.4th 1137, 1145 [existence of employment contract between private parties not proper subject of judicial notice.]  As confirmed at oral argument, Ellis did not raise the point as the application could have been the basis of a later summary judgment motion.

a public reason.' 'The broad goal of the FEHA is set forth at . . . section 12920, which states in pertinent part: 'It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex or age.' [Citation.] . . . As we stated in *Rojo* [*v. Kliger* (1990) 52 Cal.3d 65, 90]: 'The public policy against sex discrimination and sexual harassment in employment, moreover, is plainly one that 'inures to the benefit of the public at large rather than to a particular employer or employee.' [Citation.] No extensive discussion is needed to establish the fundamental public interest in a workplace free from the pernicious influence of sexism. So long as it exists, we are *all* demeaned." [Citation.] It is indisputable that an employment contract that required employees to waive their rights under the FEHA to redress sexual harassment or discrimination would be contrary to public policy and unlawful."

Prior to suing for violation of the FEHA, an employee must exhaust all administrative remedies by filing a timely and sufficient complaint with the California Department of Fair Employment and Housing (DFEH). (§§ 12960, 12965, subd. (b).) If the employee chooses to undergo DFEH's investigation process, the DFEH will either file a civil action against the employer or issue a right-to-sue letter. (§ 12965, subds. (a) & (b).) [5] If the DFEH fails to file a civil action against the employer within 150 days after the charge is filed, or earlier determines not to file a civil action, it must inform the employee, in writing, that it will issue a right-to-sue letter on request. If the employee fails to request the right-to-sue letter, the DFEH must still issue such letter on completion of its investigation, and in no event more than one year after the charge was filed. (§ 12965, subd. (b).)

---

[5] The employee may choose to receive an immediate right-to-sue letter and waive the DFEH's investigation. (Cal. Code of Regs. tit. 2, § 10005, subd. (a).)

The time limit for filing the administrative claim with the DFEH is one year from the date of the unlawful act, which may be extended up to 90 days if the employee did not learn of the unlawful act until more than a year after its occurrence. (§ 12960. subd. (d).) Finally, any lawsuit must be filed within one year from the date of the right to-sue letter. (§ 12965. subd. (b).)

**Statutes of Limitations and the Law Regarding Shortening Them**

A statute of limitations "prescribes the period[ ] beyond which an action may not be brought." (See generally 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 430, p. 546). As we have described them, such statutes "come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate." (*O'Neill v. Tichy* (1993) 19 Cal.App.4th 114, 120.)

As distilled by our Supreme Court, there are "several policies underlying such statutes. One purpose is to give defendants reasonable repose, thereby protecting parties from 'defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps.' [Citations.] A statute of limitations also stimulates plaintiffs to pursue their claims diligently. [Citations.] A countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural grounds. [Citations.]" (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806 (*Fox*).

As mentioned above, FEHA has its own prescribed period, which requires that an administrative claim must be filed with the DFEH within one year from the date of the wrongful act, with the employee then having one year from the date on which the DFEH issues a right-to-sue letter to file a complaint. (§§ 12960, 12965, subd. (b).)

Three of Ellis's five causes of action arise out of FEHA: the first, for sexual discrimination and harassment (§ 12940); the second, for failure to maintain an environment free from harassment (§ 12940, subd. (k)); and the third, for retaliation. (§ 12940, subd. (h)). As to them, and as applied to the facts here under FEHA, Ellis would have had one year from the December 14, 2010 right-to-sue letter to file her statutory claims. As to the nonstatutory claims, the limitation period is two years. (Code

Civ. Proc., § 335.1; *Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 485 [infliction of emotional distress].) Ellis's complaint, filed November 17, 2011, was timely under the applicable statutory limitation provisions.

Despite that, the trial court dismissed Ellis's complaint, apparently on the basis that the statutorily proscribed periods could be shortened, and here was, to six months after the wrongful act. Doing so, the court was apparently relying on the rule that parties may agree to shorten the limitations period. (See generally *Fageol T. & C. Co. v. Pacific Indemnity Co.* (1941) 18 Cal.2d 748, 753 [twelve month limitation provision in insurance contract "cannot be ignored with impunity so long as the limitation is not so unreasonable as to show imposition or undue advantage"].)

Various cases in various contexts recognize this rule, all of them emphasizing that the shortened limitation must be reasonable. As Witkin puts it, such provisions will be upheld if the shorter period is "reasonable, i.e. if it gives sufficient time for the effective pursuit of the judicial remedy." Interestingly, the author goes on, "[a]s a practical matter these [shortening] provisions are found only in contracts habitually drawn by the obligor, such as bills of lading, warehouse receipts, and insurance policies." (3 Witkin, Cal. Procedure, *supra,* Actions, § 469, p. 595.) This hardly describes Ellis's application for employment.

*Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1430 (*Moreno*), a case relied on by U.S. Security, recognizes the rule, describing it this way: "It is true California courts have afforded contracting parties considerable freedom to modify the length of a statute of limitations. Courts generally enforce parties' agreements for a shorter limitations period than otherwise provided by statute, provided it is reasonable. 'Reasonable' in this context means the shortened period nevertheless provides sufficient time to effectively pursue a judicial remedy. It is a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way. [Citing *Beeson v. Schloss* (1920) 183 Cal. 618, 622-623.]"

8

As the rule is generally described, "a contractually shortened limitation period, in order to be reasonable, must provide a party sufficient time to effectively pursue a judicial remedy.  A contractual period of limitation is reasonable if the plaintiff has a sufficient opportunity to investigate and file an action, the time is not so short as to work a practical abrogation of the right of action, and the action is not barred before the loss or damage can be ascertained. On the other hand, a contractual limitation provision that requires the plaintiff to bring an action before any loss can be ascertained is per se unreasonable." (51 Am. Jur. 2d (2011) Limitation of Actions, § 81, p. 552, fns. omitted.)

Of particular interest here, *Moreno* went on:  "However, a contractually shortened limitations period has never been recognized outside the context of straightforward transactions in which the triggering event for either a breach of a contract or for the accrual of a right is immediate and obvious. . . .  [M]ost reported decisions upholding shortened periods involve straightforward commercial contracts plus the unambiguous breaches or accrual of rights under those contracts." (*Moreno, supra,* 106 Cal.App.4th at p. 1430.)  This hardly describes Ellis's claims here.

**U.S. Security's Shortened Limitation Period is Not Reasonable.**

The leading treatise on California employment law cautiously wonders whether shortened limitations provisions would be enforceable in FEHA cases, given the already short limitation provision in the statute.  The treatise puts it this way:

"**Compare-Contract Provisions *Shortening* Time to Sue:**

"**[¶] . . .[¶] Discrimination claims?**  It is not clear whether provisions shortening the time to sue are enforceable where *employment discrimination* claims are involved (e.g., Title VII, FEHA, ADA, ADEA, etc.) . . . because discrimination claims are already subject to shortened statute of limitations (*see ¶16:387 ff.*).  [See *Thurman v. DaimlerChrysler, Inc.* (6th Cir. 2004) 397 F.3d 352, 358—upholding 6-month limitations period in job application form as to employee's claims under 42 U.S.C. § 1981 for racial discrimination and harassment where waiver of longer statute of limitations was 'knowing and voluntary']  [¶] One court has invalidated an employment agreement that required employees to sue on Title VII claims within six months after the violation.

9

Because the EEOC maintains exclusive jurisdiction during the 180-day period, 'the effect of the limitation clause at issue could ultimately leave plaintiff without redress, given the EEOC filing requirements.'" [*Lewis v. Harper Hosp.* (ED MI 2002) 241 F.Supp.2d 769, 772.] (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2013) § 16:545-546.5, pp. 16-94-16-95 (Chin).)

One Court of Appeal case has addressed the subject, and found a six month limitation provision to be unreasonable: *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107. There, Martinez sued his former employer for violation of the Labor Code, national origin discrimination in violation of FEHA, and wrongful termination. The employer moved to compel arbitration based on the agreement Martinez was required to sign as a condition of employment, one provision of which stated that each party had six months to notify the other of a claim. (*Id.* at pp. 111-112, fn. 1.) The American Arbitration Association twice refused to conduct arbitration, for two reasons, the second of which was that the agreement gave parties less time to assert claims than would otherwise be available by statute. Despite that, the trial court appointed a new arbitrator, and the arbitration proceeded to an award. Martinez objected to the award and then petitioned to vacate it. The trial court denied the petition, confirmed the award, and entered judgment. Martinez appealed. (*Id.* at p. 112.)

The Court of Appeal reversed, finding the arbitration agreement to be unconscionable, "permeated with illegality, and unenforceable." (*Martinez v. Master Protection Corp., supra,* 118 Cal.App.4th at p. 119.) Elaborating, the court held as follows: "The statutes upon which Martinez's claims are premised provide significantly longer periods of time than six months within which to assert a claim of violation. Specifically, Martinez's claim of national origin discrimination arises out of the FEHA. That statute provides that Martinez's administrative charge must be filed within one year from the date of the discriminatory act, and that he must file any civil action within one year of the date on which the administrative agency issues a 'right to sue' letter. (Gov. Code, §§ 12960, subd (d), 12965, subd. (b).) '[A]n arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA.'

10

(*Armendariz, supra,* 24 Cal.4th at p. 101.) Similarly, the Labor Code, which provides the bases for Martinez's causes of action for unpaid wages and penalties, affords an employee three or four years to assert the claims sued upon here. [Citations.] If there was any doubt, after *Armendariz,* it is clear that 'parties agreeing to arbitrate statutory claims must be deemed to "consent to abide by the substantive and remedial provisions of the statute. . . ." ' The shortened limitations period provided by FireMaster's arbitration agreement is unconscionable and insufficient to protect its employees' right to vindicate their statutory rights." (*Id.* at p.117-118.)

*Martinez* is compelling. Similar to Martinez, Ellis is asserting FEHA claims, and the provision in the application—which she was apparently required to sign as a condition of even seeking employment—seriously truncates the time she has to vindicate her statutory rights, drastically reducing the time to sue allowed by the FEHA by as much as five-sixths. Specifically:

As noted above, an administrative complaint must be filed with the DFEH within one year of the alleged unlawful action (§ 12960, subd.(d). If the department decides not to pursue the matter, it must issue a right-to-sue letter no later than one year after a complaint is filed. (§ 12965, subd. (b).) The employee then has one year from the date of that letter to file a civil action. (*Id.* subd. (d)(2); *Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 671, fn.1) In sum, the outside limit to sue under FEHA is as long as three years—and necessarily somewhat more than two. That period, the Legislature has determined, will provide an effective remedy (§ 12920). Six months does not. It does not provide "sufficient time for the effective pursuit of the judicial remedy." (3 Witkin, Cal. Procedure, *supra,* Actions, § 469, p. 595.) It violates the public policy in section 12920. It is too short.

We find support for our conclusion in some general discussion of limitation provisions, illustrated by that of the Supreme Court in *Fox, supra,* 34 Cal.4th 797. There, addressing the discovery rule in the context of a products liability case, the court noted that "At present, the statute of limitations for an action for injury to an individual caused by the wrongful act or neglect of another must be commenced within *two* years from the

11

date of accrual. (Code Civ. Proc., § 335.1.) This change was effected in 2002, when the Legislature found the one-year limitations period of section 340, former subdivi111sion 3, 'unduly short' and adopted a two-year period 'to ensure fairness to all parties.' (Stats. 2002, ch. 448, § 1.)" (*Id.* at p. 809, fn 3.) If one year was "unduly short" for personal injury actions in general, a fortiori is a six month limitation provision "unduly short" in a FEHA case, which requires that the employee first report the claimed misconduct to the DFEH and await its action before any suit is ripe, necessarily delaying the filing of the complaint.

When the Legislature extended the statute of limitations for personal injuries from one to two years, it also found that "[m]any such matters would be resolved without the need to resort to litigation if California's statute of limitations permitted such actions to be filed within two years . . . ." (Stats. 2002, ch. 448, § 1, p. 2522.) Or, as the Legislature also found: "Extending the statute of limitations will reduce litigation in these cases as well, because [victims] will have the opportunity to fully evaluate and use other alternatives, rather than being forced to litigate prematurely." (*Ibid*.) In other words, a longer period allows a victim time for development and investigation of a case, for assessment, for evaluation—and for the possibility of settlement. The six-month limitation provision here precludes that.

Moreover, the shortened limitation provision would thwart one aspect of the FEHA that is critical in some cases: the administrative enforcement by DFEH itself. (§ 12930, subd. (f); Cal. Code of Regs., tit. 2 § 10026.)[6] Again, the leading treatise is apt, describing the significance of the DFEH involvement this way: "Filing charges with the DFEH is often the *only* remedy for employees with modest salaries and small claims; they need the DFEH because they are not likely to find a private lawyer to represent

---

[6] Before January 1, 2013, the DFEH could pursue the matter itself by issuing an accusation and prosecuting the claim before the Fair Employment and Housing Commission (FEHC) (§ 12930, subd. (h)). Effective January 1, 2013, the FEHC has been eliminated, and the DFEH will have to file a civil action in court in order to pursue the matter itself. (See Stats. 2012, Ch. 46, § 35; Gov. Code, § 12930.)

12

them.  [¶] A DFEH filing may be helpful in any case because it requires a prompt, detailed response from the employer, giving the employee a free, quick look at the defenses the employer is likely to raise.  A DFEH filing may also induce the employer to hire an attorney, and the legal advice received may lead to prompt settlement of minor disputes." (Chin, *supra,* § 7:1031.2, p. 7-156.)  The six-month provision here effectively eliminates any meaningful participation by the DFEH.  It is not reasonable.[7]

The shortened limitation provision here would be against public policy in the further respect that it would have anomalous effects.  That is, since the provision runs six months from the "date of the employment action" on which the employee's suit is based, it would mean different limitation periods for different FEHA claims.  As applied here, for example, one date would run from the time Haynes harassed Ellis, another when her claim that U.S. Security failed to prevent harassment finally accrued, and yet another when she was retaliated against.  This is not how FEHA is designed to operate, with all claims timely if filed within one year from the right-to-sue letter.

Another anomaly, and again making the provision incongruous with FEHA, is that application of the six-month limitation would mean that Ellis's claims could be time-barred as against U.S. Security, yet be timely against Haynes, who does not have the benefit of the employment application.

---

[7] Ellis's position below was that the FEHA statute of limitations can never be shortened.  While we need not reach this issue, it may be that any attempt to shorten the limitation provision in the FEHA statutory scheme would be against the law.  Chin indicates as much.  So, too, does the governing policy behind the FEHA set forth in section 12920, a policy expounded on in *Armendariz:*  FEHA is for the good of the public.  Civil Code section 3513 provides that "Anyone may waive the advantage of a law intended solely for his benefit.  But a law established for a public reason cannot be contravened by a private agreement."

13

**U.S. Security's Attempts to Support the Limitation Provision Are Unpersuasive**.

Seeking to persuade us to uphold the trial court's order, U.S. Security first cites the general rule that parties can shorten a limitation provision, acknowledging that it can be done only if "the shortened period itself shall be a reasonable period." U.S. Security then briefly discusses what it claims is the policy behind a limitation provision, to " 'encourage promptness in the bringing of actions, [so] that the parties shall not suffer by loss of evidence from death or disappearance of witnesses, destruction of documents, or failure of memory.' " As to this, it is probably enough to note the warning to employees in the leading California treatise, in italics yet: "*CAUTION*: A *short statute of limitations* applies. (e.g., one year for FEHA claims.)" (Chin, *supra,* § 1.64, p. 1-16.13.) Such a short limitation provision necessarily implies a prompt case, not to mention that the presuit administrative requirements necessarily mean notice to the employer of the claimed misconduct. No claim can ever be stale under the FEHA limitation period.

Returning to U.S. Security's position, its brief then asserts this: "California law is in accord. (*Soltani v. Western & Southern Life Ins. Co.* (9th Cir. 2001) 258 F.3d 1038, 1042 ["Many California cases have upheld contractual shortening of statutes of limitations in different types of contracts, ***including employment situations***."] [emphasis added]; *Han v. Mobil Oil Corp.* (9th Cir. 1995) 73 F.3d 872, 877 ["California permits contracting parties to agree upon a shorter limitations period for bringing an action than that prescribed by statute, so long as the time allowed is reasonable."][collecting cases]; *Moreno v. Sanchez* (2003) 106 Cal.App.4th 1415, 1430 ["California courts have afforded contracting parties considerable freedom to modify the length of a statute of limitations. Courts generally enforce parties' agreements for a shorter limitations period than otherwise provided by statute, provided it is reasonable."]; *Zalkind v. Ceradyne, Inc.* (2011) 194 Cal.App.4th 1010, 1030 ["agreements to shorten the statute of limitations do not violate public policy and are enforced if reasonable"]; *Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 183 [same].)" The passage is unpersuasive.

14

To begin with, except for *Soltani*, discussed below, none of the other four cases involves any dispute involving any employer. More significantly, two of the cases found the shortened limitation provision unenforceable. *Moreno* found the public policy considerations behind the delayed discovery rule precluded enforcement of the one-year contractual limitation provision in the homebuyer's contract with the inspection company. (*Moreno, supra,* 106 Cal.App.4th at p. 1434). And *Charnay* held unenforceable a provision in a client's retainer agreement with his attorney that required the client to dispute legal bills within 10 days of receipt. The court found the provision "inherently unreasonable" (*Charnay, supra,* 145 Cal.App.4th at p. 183), and also one that would "eviscerate the delayed discovery rule, [and be] void as against public policy." (*Id.* at p. 184.)

The *Charnay* court also reiterated its earlier statement in *Moreno*, quoted above, that " '[A] contractually shortened limitations period has never been recognized outside the context of straightforward transactions in which the triggering event for either a breach of a contract or for the accrual of a right is immediate and obvious. . . .' " (*Charnay, supra,* at p. 183). Here, of course, Ellis's claims are not all based on conduct that is "immediate or obvious," illustrated, for example, by her claims for failure to prevent and for retaliation, both of which require the development of facts occurring over a period of time.

We recently described a claim for failure to prevent discrimination in *Veronese v. Lucasfilm Ltd*. (2012) 212 Cal.App.4th 1, 28: "Government Code section 12940, subdivision (k), prohibits an employer from failing 'to take all reasonable steps necessary to prevent discrimination.' As the leading California treatise states it, 'This provision creates a statutory tort action with the usual tort elements (duty of care to plaintiff, breach of duty, causation and damages). (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 286.)' (Chin, [*supra,*] § 7.671, p. [7-711].)" It is easy to imagine cases where such a claim could easily take months to develop, certainly more than six months, necessitating a suit that was premature. This is against public policy. Again, *Fox* is apt: "It would be contrary to public policy to require plaintiffs to file a lawsuit "at

15

a time when the evidence available to them failed to indicate a cause of action." [Citations.] Were plaintiffs required to file all causes of action when one cause of action accrued . . . they would run the risk of sanctions for filing a cause of action without any factual support. [Citations.] It would be difficult to describe a cause of action filed by a plaintiff, before that plaintiff reasonably suspects that the cause of action is a meritorious one, as anything but frivolous. At best, the plaintiff's cause of action would be subject to demurrer for failure to specify supporting facts [citation]. In sum, the interest of the courts and of litigants against the filing of potentially meritless claims is a public policy concern that weighs heavily against the *Bristol–Myers Squibb* formulation of the discovery rule." (*Fox*, *supra,* 35 Cal.4th at p. 815.)

Along these same lines, given the time involved while the DFEH conducts its investigation, the six-month provision here could force an employee to file a lawsuit without having exhausted all administrative remedies, which, under the FEHA is a " 'jurisdictional prerequisite to resort to the courts.' " (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70.) It is ground for dismissal. (*Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1613; *Martin v. Lockheed Missiles & Space Co., Inc.* (1994) 29 Cal.App.4th 1718, 1724.)

Turning to *Soltani*, while it in fact involved a claim by insurance agents against their former employer, it was not in any setting applicable here. The case was described by the Ninth Circuit as follows: "Appellants' complaint basically contends that Western-Southern wrongfully terminated Appellants' employment in violation of public policy because they refused, as required by Western-Southern, to pay certain premiums for policy holders to prevent policies from lapsing. The suit contends that this requirement is an unfair business practice under California law." (*Soltani, supra,* 258 F.3d at p. 1040.) The court then went on to discuss the six-month limitation provision there which, unlike the six-month limitation provision here, required suit within six months of termination of employment. And the only discussion was whether the

16

provision was unconscionable, the court concluding it was not.[8] In short, *Soltani* was not a FEHA case, manifest perhaps best by the fact that the term is never mentioned in the opinion.

To the extent *Soltani* has possible pertinence here, it is in its discussion of the provision in the contract that said no suit could be filed "until ten days after service upon the Chairman, President or Secretary of a written statement of the particulars and amount of your claim." (*Soltani, supra,* 258 F.3d at p. 1041.) The court found this provision unenforceable, with no justification for it, with observations that are pertinent here.

The Ninth Circuit began its analysis with a quotation from *Armendariz*: "We emphasize that if an employer does have reasonable justification for the arrangement— i.e., a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum—such an agreement would not be unconscionable. Without such justification, we must assume that it is." (*Soltani, supra,* at p. 1046.) "Applying such reasoning here, we can discern little justification for the short ten-day notice provision in the Western-Southern contracts. Ten days is simply not enough time for the company to investigate the factual basis of a claim, to attempt to settle claims without litigation or consider fiscal implications of potential litigation, or to take corrective action to prevent other such claims." (*Ibid.,* fn. omitted.) The court then went on: "Moreover, the ten-day notice provision alone does not prevent stale claims. The clause requires notice of any claim, whether or not it is within six-months of termination, or even whether it is based upon termination. It would bar suits while a plaintiff is employed that arose several years earlier (which are not otherwise barred by statutes of limitations) or such suits filed after a mere eleven days of accrual. . . . [¶] Further, the ten-day written notice provision

---

[8] That the limitation provision in *Soltani* ran from termination led to the conclusion that the provision was not substantially unconscionable, "because it did not depend upon when the claim arose (i.e., a 3-year-old claim could still be filed, as long as it was also filed within 6 months after the employee stopped working." (See Chin, *supra,* § 18.670.2, p. 18-82.)

cannot be for purposes of judicial economy. It is unaccompanied by any corresponding requirement to exhaust internal intra-company grievance procedures. Indeed, there is no indication that Western-Southern would do *anything* during that ten-day period. Where the effect of a failure to comply with the provision is to lose all legal remedies for wrongdoing regardless of the merits, the clause can work substantial prejudice to an employee. The notice-of-suit clause should not serve as 'a technical escape-hatch by which to deny [relief]." (*Insurance Company of Pennsylvania* [*v. Associated International Ins. Co.* (1990)] 922 F.2d [516], 523.) Its effect, with no discernable justification by Western-Southern, is merely to 'maximize employer advantage' and bar any suits relating to the employment agreement." (*Id.* at pp. 1046-1047.) That discussion well demonstrates why the six-month limitation provision here cannot be enforced.

Two other California cases cited in U.S. Security's brief deserve mention. The first is *Beeson v. Schloss, supra,* 183 Cal. 618, which it cites as follows: "Beginning with our Supreme Court's decision in *Beeson v. Schloss* (1920) 183 Cal. 618, courts applying California law have upheld six month—and shorter—limitation provisions." *Beeson* was a suit by a travelling salesman for commissions due from his former employer. One clause of the salesman's contract said that a statement rendered to the salesman " 'shall be deemed . . . correct' " and " 'binding' " unless objections were filed " 'within ten days of rendering,' " and that no suit could be brought " 'after the lapse of six months from the rendering.' " (*Beeson, supra,* 183 Cal. at pp. 620-621.) Upholding the limitation provision there, the Supreme Court began with the recitation that "It is a well-settled proposition of law that the parties to a contract may stipulate therein for a period of limitation, shorter than that fixed by the statute of limitations, and that such stipulation violates no principle of public policy, provided the period fixed be not so unreasonable as to show imposition or undue advantage in some way. (*Tebbetts v. Fidelity etc. Co.,* 155 Cal. 137; [citations].)" (*Id.* at p. 622.) The Court went on to reverse the judgment for the salesman, upholding the limitation provision as reasonable under the circumstances there. (*Id.* at 627.) The circumstances here are a far cry.

Moreover, *Beeson* involved a claim for a salesman's commissions, clearly a claim that, as *Moreno* would describe it, was "immediate and obvious," ripe immediately upon nonpayment. (*Moreno, supra,* 106 Cal.App.4th at p. 1430.) This is unlike the fluid claims involved here, where there was claimed harassment brought to the attention of the employer, and whose conduct in dealing with it formed the basis of one of Ellis's claims, and whose ultimate retaliation against her formed the basis of another.

The second case, which U.S. Security describes as "instructive," is *Perez v. Safety-Kleen Sys.* (N.D. Cal., June 27, 2007, No. C 05-5338) 2007 WL 1848037, where U.S. Security asserts "the court relied on *Soltani* and California law to conclude that a limitation provision that is nearly identical to the provision at issue here was valid and enforceable despite plaintiff's statutory employment claims." *Perez* involved two separate complaints. The first, by two plaintiffs, alleged seven causes of action; the second, by one plaintiff, alleged two of the same seven. None was a FEHA claim. All the court did was dismiss the complaint of the second plaintiff as beyond the shortened limitation provision, doing so with nothing more than a parroting of *Soltani.* There was no independent analysis, let alone discussion of any public policy issue. And no mention of FEHA. *Perez* is hardly instructive.

Finally, U.S. Security cites cases, both state and federal, from other jurisdictions, that it claims support its position here. As quoted from its brief, its argument is that these courts upheld shortened limitation provision looking "to statute of limitations in employment actions under federal law. *(Timko v. Oakwood Custom Coating, Inc.* (2001) 244 Mich.App. 234, 241-243 [six-month limitation provision not unreasonable since six months is the time limit within which claims must be brought for breach of the duty of fair representation under the Labor Management Relations Act [29 U.S.C. § 160(b)].)" U.S. Security also cites *Taylor v. Western & Southern Life Ins. Co.* (7th Cir. 1992) 966 F.2d 1188, a Title VII case, and *Fink v. Guardsmark, LLC.* (D. Or. Aug 19, 2004, No. CV 03-1480) 2004 WL 1857114). These cases are unhelpful.

Whatever Title VII or some other federal law might say, "it is not appropriate to follow federal decisions where the distinct language of FEHA evidences a legislative

19

intent different from that of Congress. (See *Fisher v. San Pedro Peninsula Hospital* [(1989)] 214 Cal.App.3d [590,] 606 [FEHC does not rely on title VII precedent that appears unsound or conflicts with purposes of FEHA]." (*Page v. Superior Court* (1995) 31 Cal.App.4th 1206, 1215-1216.)

A particularly apt illustration of this is in *Romano v. Rockwell* (1996) 14 Cal.4th 479, where the Supreme Court held that the FEHA statute of limitations for wrongful discharge ran from the date of actual discharge, not the date of notice of discharge—this, despite United States Supreme Court authority to the contrary. (*Romano v. Rockwell, supra,* at pp. 496-497.) As our Supreme Court noted, it was "not bound by these decisions, because they interpret a federal statutory scheme not at issue here." (*Id.* at p. 497)[9]

## DISPOSITION

The order granting judgment on the pleadings is reversed.

---

[9] U.S. Security's respondents brief ends with this short statement:

"B. AT A MINIMUM, APPELLANT'S NON-FEHA CLAIMS FAIL

"Below, and again in her opening brief, appellant did not dispute that her non-FEHA claims—her fourth cause of action for intentional infliction of emotional distress and her fifth cause of action for negligent hiring, supervision and training—are barred by the six-month limitation provision in her agreement. Her sole contention is, and always has been, that application of the six-month limitation provision to her FEHA claims is against public policy and unenforceable. Thus, at a minimum, her non-FEHA claims are time-barred."

We do not reach the issue, as it was not briefed by the parties, neither below nor here.

 

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Brick, J.[*]


A136028, *Ellis v. U.S. Security Associates*

_____

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:                                      Solano County Superior Court

Trial Judge:                                      Honorable Harry S. Kinnicutt

Attorney for Plaintiff and Appellant:             Wiseman Law Group, Joseph J.
                                                  Wiseman

Attorneys for Defendants and Respondents:         PinedoLaw, Craig A. Pinedo