Filed 11/17/22; Certified for Publication 12/14/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BERNELL GREGORY BECO, | |
| Plaintiff and Respondent, | G059382 |
| v. | (Super. Ct. No. 30-2019-01103112) |
| FAST AUTO LOANS, INC., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Nathan R. Scott, Judge.  Affirmed.

Landau Law, James H. Berry, Jr., and Kate LaQuay; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Jeff Raskin and Nadia A. Sarkis for Defendant and Appellant.

Neal-Lopez Law Group and Tracy Neal-Lopez; Mesriani Law Group and Rodney Mesriani for Plaintiff and Respondent.

\*        \*        \*

Plaintiff Bernell Gregory Beco filed a complaint in Orange County Superior Court alleging 14 causes of action relating to the termination of his employment with defendant Fast Auto Loans, Inc. (Fast Auto), including numerous claims under the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.) (FEHA), numerous wage and hour violations under the Labor Code, wrongful termination, unfair competition (Bus. & Prof. Code, § 17200), and additional tort claims. Fast Auto moved to compel arbitration, arguing that Beco had signed a valid arbitration agreement (the agreement) at the time he was hired.

The trial court found the agreement unconscionable to the extent that severance would not cure the defects, and declined to enforce it. We agree with the court that the agreement was unconscionable, and we further reject Fast Auto's argument that the arbitrator, not the court, should have decided the issue of unconscionability. Additionally, because the agreement included numerous substantively unconscionable provisions, we find no abuse of discretion in the court's decision not to sever them. Accordingly, we affirm the order.

I

FACTS

Fast Auto, a subsidiary of Community Loans of America, Inc., is a payday lender. Beco was hired by Fast Auto's former affiliate, J.W.P. Lenders Corporation (doing business as RPM Lenders) (Lenders), as a sales representative in 2014. In January 2016, Lenders disbanded, and Beco became an employee of Fast Auto as a branch manager.

In March 2016, Fast Auto required its employees to sign an arbitration agreement as a condition of employment. The document is entitled "Mediation and Arbitration Procedure" and is approximately four pages long. While we can describe

2

other provisions separately, it is worth setting forth the beginning of the agreement verbatim:

"1.    As a condition of, and in consideration of, your employment or continued employment with Community Loans of America, Inc., its subsidiaries and/or affiliates (hereafter the 'Company'), you (the 'Employee') agree that any controversy or claim arising out of or relating to your employment relationship with the Company or the termination of that relationship, must be submitted for nonbinding mediation before a third-party neutral, and (if necessary) for final and binding resolution by a private and impartial arbitrator, to be jointly selected by you and the Company.

"a.    *Claims Covered:* This agreement to submit to mediation and (if necessary) arbitration:

"i.    Covers any dispute concerning the arbitrability of any such controversy or claim; and

"ii.    Includes, but is not limited to, any claim that could be asserted in court or before an administrative agency or claims for which the employee has an alleged cause of action, including without limitation claims for breach of any contract or covenant (expressor implied), tort claims, claims for discrimination (including but not limited to discrimination based on sex, pregnancy, race, national or ethnic origin, age, religion, creed, marital status, sexual orientation, mental or physical disabilities or medical condition or other characteristics protected by statute), claims for wrongful discharge, and/or claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, and whether based on statute or common law; and

"iii.    All those claims whether made against the Company, any of its subsidiary, parent or affiliated entities, its shareholders, or its individual officers or directors (in an official or personal capacity).

"b.    *Claims Not Covered:* Claims covered by this Agreement do not include:

"i.    A claim for workers' compensation benefits;

3

"ii.    A claim for unemployment compensation benefits;

"iii.    A claim by the Company for injunctive or other equitable relief, including but not limited to claims for unfair competition, solicitation of the Company employees and the taking and/or use or unauthorized disclosure of trade secrets or confidential information, for which the Company may seek and obtain relief from a court of competent jurisdiction; and

"iv.    A claim based upon the Company's current (successor or future) employee benefits and/or welfare plans that contain an appeal procedure or other procedure for the resolution of disputes under the plan."

Other provisions of the agreement included a statement that arbitration will be administered by the American Arbitration Association (AAA) under its National Rules for the Resolution of Employment Disputes (AAA rules), "effective June 1, 1996, as may be amended." The agreement "incorporated by reference [the AAA rules] into this Procedure." No copy of the rules was attached to the agreement, nor did it provide a website link or phone number.

Discovery was left to the arbitrator's discretion: "The arbitrator shall have the authority to allow for appropriate discovery and exchange of information before a hearing, including but not limited to[,] production of documents, information requests, depositions, and subpoenas."

The agreement also changed the applicable limitations periods from the several different statutes of limitation provided for under California law to "within three (3) months of the date the aggrieved first knew or should have known of the facts giving rise to the claim; otherwise, the claim shall be void and deemed waived."

Under the agreement, costs were also shifted. If arbitration was initiated by the employee, he or she was required to pay the first $100 of the filing fee, which was apparently nonrefundable, regardless of who prevailed. While Fast Auto would pay for the first day of arbitration, "[a]ll additional costs of the arbitration proceeding shall be

4

paid by the non-prevailing party, unless the arbitrator shall find that causing the Employee to pay any portion of fees represents an undue hardship on Employee, in which case the Arbitrator can assess all such costs against Company." Further, notwithstanding the undue hardship provision, "each party shall pay his/her/its own attorney, expert and witness fees and expenses."

With respect to the agreement's execution, according to Fast Auto, all employees were notified of the agreement by e-mail on or about March 16, 2016. There is no evidence that Beco, specifically, received the e-mail. Further, the e-mail allegedly sent to Beco is not in the record, only a copy of the e-mail sent to another employee. That e-mail did not mention an agreement, stating: "You have been assigned a new checklist which requires completion. Please log into Employee Self-Service to complete the On Boarding Check List – CVNDC checklist." No deadline for completion was provided in the e-mail.

On May 21, Beco logged into the employee portal of Fast Auto's Web site to electronically sign the agreement. While Fast Auto claims that "[e]mployees may take as much or as little time to review the document as they wish before moving on to the step of electronically signing it," they did not offer the declaration of anyone who was actually present when Beco did so.

Beco stated in his declaration that he did not recall an arbitration agreement specifically, but discussed it in the context of other documents he was required to acknowledge at the time. He stated that after being employed for over a year and a half, "I was required to acknowledge a bunch of complex legal documents in order to continue my employment. I felt pressured to sign the documents because I was told that I had to acknowledge the documents in order to continue my employment." Nobody explained to him what an arbitration agreement was, "nor did [he] have a reasonable opportunity to review the documents placed before me." He was "given a few minutes to quickly acknowledge a multitude of documents without any time for questions or a reasonable

5

time to review" them. He was told by supervisors that if he did not agree to acknowledge the documents, he would be terminated. At no time was he provided a copy of the arbitration rules or told where he could find them.

Beco was terminated on October 11, 2018. In October 2019, he filed the instant complaint against Fast Auto and numerous individual defendants. Fast Auto answered the complaint on February 19, 2020. On March 9, Fast Auto filed its motion to compel arbitration. The motion itself did not mention the issue of the enforceability of the alleged arbitration agreement being decided by the arbitrator, although it discussed numerous other points about the agreement and its electronic execution. Fast Auto's points and authorities raise the issue of delegation in two brief paragraphs. Beco's opposition focused primarily on the issue of unconscionability, as did Fast Auto's reply, which did not mention the delegation issue again.

The court denied the motion to compel arbitration, concluding that the agreement was permeated by unconscionability which could not be remedied by severance. Fast Auto now appeals.


II

DISCUSSION

*Standard of Review and General Principles*

We use general principles of California contract law to determine the enforceability of an arbitration agreement. (*Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1153.) "'The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement, while the party opposing the petition bears the burden of establishing a defense to the agreement's enforcement.'" (*Sandoval-Ryan v. Oleander Holdings LLC* (2020) 58 Cal.App.5th 217, 222.) "[A]greements to arbitrate [may] be invalidated by

6

'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.)

"'If the court's order is based on a decision of fact, then we adopt a substantial evidence standard. [Citations.] Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.'" (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) When there is no conflicting evidence regarding the meaning of the agreement, its interpretation is a question of law. (*Ibid.*) The decision to sever rests in the trial court's discretion and is reviewed for abuse of discretion. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 121-127 (*Armendariz*), abrogated in part on another ground in *AT&T Mobility LLC v. Concepcion*, *supra*, 563 U.S. at p. 340.)

The threshold question is whether any agreement to arbitrate existed. Beco does not contest this point, but argues instead the agreement was unconscionable. Fast Auto contends, however, that it was for the arbitrator, not the court, to decide whether the agreement was unconscionable under what they refer to as the "delegation clause" in the agreement, but which is more fairly referred to as the "Claims Covered" provision.

*Delegation*

"'[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."' [Citation.] But '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so.'" (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 772 (*Mendoza*).)

"This is a '"heightened standard"' that '"pertains to the parties' manifestation of intent, not the agreement's validity."' [Citations.] That is because the question of who would decide gateway questions like the unconscionability of an

7

arbitration provision 'is not one that the parties would likely focus upon in contracting, and the default expectancy is that the court would decide the matter.' [Citations.] 'Although parties are free to authorize arbitrators to resolve such questions, [courts] will not conclude that they have done so based on "silence or ambiguity" in their agreement, because "doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide."'" (*Mendoza*, *supra*, 75 Cal.App.5th at p. 772.)

"Courts have held that '"[t]here are two prerequisites for a delegation clause to be effective. First, the language of the clause must be clear and unmistakable. [Citation.] Second, the delegation must not be revocable under state contract defenses such as fraud, duress, or unconscionability."'" (*Mendoza*, *supra*, 75 Cal.App.5th at p. 773.)

As set forth in full above, paragraph 1 sets forth the general provision requiring arbitration. The parties "agree that any controversy or claim arising out of or relating to your employment relationship" is subject to nonbinding mediation and, if necessary, binding arbitration. Immediately following, paragraph 1, subparagraph a, of the Claims Covered provision, states: "The agreement to submit to mediation and (if necessary) arbitration: [¶] . . . Covers any dispute concerning the arbitrability of any such controversy or claim. . . ." The next part of the Claims Covered subparagraph lists the type of claims that are expressly included, such as contract, tort, discrimination claims, wrongful discharge, and others. The following subparagraph is titled "Claims Not Covered" and lists worker's compensation, unemployment benefits, a claim by Fast Auto for violation of trade secrets or unfair competition laws, and claims about Fast Auto's employee benefit plans.

According to Fast Auto, paragraph 1, subparagraph a, is a clear and unmistakable delegation clause. Fast Auto argues "[i]t could not be anything else." We disagree. The language of this provision is, at best, ambiguous – "any dispute concerning

8

the arbitrability of any such controversy or claim" could very easily be read to mean a specific *substantive* dispute or claim, not the issue of who decides whether the entire agreement is enforceable or unconscionable. This is particularly true given the context – the "Claims Covered" and the "Claims Not Covered" language immediately following the general arbitration provision.

"Language such as 'any disputes, differences or controversies' may well be adequate and necessary for the parties to express their intention to arbitrate all *substantive* claims, since the number and diversity of potential future substantive claims is so great as to defy a specific enumeration of each type. But the issue of who would decide the enforceability of the arbitration clause *itself* is a horse of a different color. It is a distinct issue that could and would be easily addressed—if the parties actually contemplated it at the time of contracting—by stating expressly that the arbitrator shall decide questions of the enforceability of the arbitration provision. Because such issues are normally decided by the court, parties who consider the matter and want the issues to be decided instead by the arbitrator would most likely spell out their unusual intention in the arbitration provision. The absence of such express language (or extrinsic evidence to the same effect) therefore gives rise to the inference that the parties did *not* consider the matter. Indeed, because the issue is arcane and *not* likely contemplated by the parties, silence or ambiguity as to who would decide the enforceability of the arbitration provision suggests it was not a matter on which the parties mutually agreed and, therefore, the enforceability issue *cannot* be arbitrated—no matter how much public policy favors the notion of arbitration generally." (*Ajamian v. CantorCO2E, L.P.* (2012) 203 Cal.App.4th 771, 786-787 (*Ajamian*).)

We do not disagree with Fast Auto that as a general rule, disputes about arbitrability can be submitted to the arbitrator rather than the court, including whether an agreement is unconscionable. But what we do take issue with is Fast Auto's suggestion that merely including the word "arbitrability" contains some magical power that

immediately transforms an ambiguous clause into a "clear and unmistakable" one. Fast Auto's argument on this point includes a laundry list of citations without discussion of whether the courts in those cases found the language clear and unmistakable or what language was at issue in those cases.

For instance, in *Rent-A-Center West v. Jackson* (2010) 561 U.S. 63, 66, the United States Supreme Court found a valid delegation provision where the arbitration agreement stated: "'[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.'" Similarly, in *Mendoza*, the court found the following language constituted clear and unmistakable evidence of an intent to delegate: "'The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or *formation of the arbitration policy*, including without limitation any claim that this policy is void or voidable.'" (*Mendoza, supra*, 75 Cal.App.5th at p. 773.)

That kind of specific, precise language is a far cry from the wording here, which, in the context of discussing claims that are and are not subject to arbitration, stated the arbitration agreement "[c]overs any dispute concerning the arbitrability of any such controversy or claim." Indeed, the only cases Fast Auto cites with language anywhere close to the ambiguous language used here are nonbinding and unpublished federal district court cases, and even those use different language in different contexts.

Fast Auto's next argument is that even if the "Claims Covered" provision was not a delegation clause, incorporating the AAA employment dispute arbitration rules into the arbitration agreement was sufficient to demonstrate a clear and unmistakable intent that the arbitrator would decide arbitrability. Fast Auto quotes language in the rules stating that the arbitrator had "the power to rule on his or her own jurisdiction,

10

including any objections with respect to the existence, scope or validity of the arbitration agreement."

Fast Auto relies on two California cases for the proposition that it is "well-established" that incorporation by reference is sufficient to meet the "clear and unmistakable" test.[1]  These cases involved commercial matters and parties of relative sophistication, and are otherwise distinguishable on the facts.  (*Greenspan v. LADT, LLC* (2010) 185 Cal.App.4th 1413, 1425 [parties stipulated to use of rules during arbitration]; *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 549 [agreement to incorporate rules expressly documented in arbitration agreement].)

In the employment context, and especially under the facts here, we find that incorporation by reference does not meet the clear and unmistakable test.  We agree with the court's comments in *Ajamian:*  "In our view, while the incorporation of AAA rules into an agreement might be sufficient indication of the parties' intent in other contexts, we seriously question how it provides *clear* and *unmistakable* evidence that an employer and an employee intended to submit the issue of the unconscionability of the arbitration provision to the arbitrator, as opposed to the court.  There are many reasons for stating that the arbitration will proceed by particular rules, and doing so does not indicate that the parties' motivation was to announce who would decide threshold issues of enforceability.  [¶]  Moreover, the reference to AAA rules does not give an employee, confronted with an agreement she is asked to sign in order to obtain or keep employment, much of a clue that she is giving up her usual right to have the court decide whether the arbitration provision is enforceable.  Assuming that an employee reads the arbitration provision in the proposed agreement, notes that disputes will be resolved by arbitration according to AAA rules, and even has the wherewithal and diligence to track down those rules, examine them, and focus on the particular rule to which appellants now point, the rule merely

---

[1] We find the out-of-state and district court cases Fast Auto cites unpersuasive.

11

states that the arbitrator shall have 'the power' to determine issues of its own jurisdiction, including the existence, scope and validity of the arbitration agreement. This tells the reader almost nothing, since a court *also* has power to decide such issues, and nothing in the AAA rules states that the AAA arbitrator, as opposed to the court, *shall* determine those threshold issues, or has *exclusive* authority to do so, particularly if litigation has already been commenced." (*Ajamian*, *supra*, 203 Cal.App.4th at p. 790.)

Indeed, numerous federal cases in the context of securities arbitration have found that incorporation by reference is not sufficient, because it does not reflect that the parties focused and agreed upon the issue. (See *Ajamian*, *supra*, 203 Cal.App.4th at pp. 790-791; see also *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944-945.) There is, of course, no such evidence here that the parties, particularly Beco, had any idea what the AAA rules might have meant, much less that he focused on this issue or knowingly agreed to delegate such disputes to an arbitrator. It is undisputed that the agreement neither attached the AAA rules nor provided a method for Beco to locate and read them before he signed the agreement, and further, there is no evidence that he did so. Concluding that Beco actually considered and consciously agreed to delegate the issue of arbitrability would be a complete fiction. While such fictions might be permissible in other areas of arbitration law, that is not the case with delegation, which requires meeting a ""'heightened standard.'""" (*Mendoza*, *supra*, 75 Cal.App.5th at p. 772.)

Accordingly, we reject the contention that the arbitration agreement, with or without the AAA rules incorporated, evidenced a "clear and unmistakable" intent to delegate the validity of the agreement to the arbitrator. It does not. We therefore reject Fast Auto's remaining arguments with respect to delegation and the Claims Covered provision.

We conclude the court had jurisdiction to decide whether the agreement was enforceable. We therefore move on to the issue of whether the agreement was unconscionable.

12

*Unconscionability*

Civil Code section 1670.5, subdivision (a),[2] codifies unconscionability as a reason for refusing a contract's enforcement. It states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (§ 1670.5, subd. (a).) This provision applies to arbitration agreements. (*Armendariz*, *supra*, 24 Cal.4th at p. 114.)

"The general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party. [Citation.] Under this standard, the unconscionability doctrine '"has both a procedural and a substantive element."' [Citation.] 'The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*Kho*).)

While both procedural and substantive unconscionability are required to deny enforcement of a contract as unconscionable, "they need not be present in the same degree. . . . [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz*, *supra*, 24 Cal.4th at p. 114; see *De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 982.) We discuss each of these in turn.

---

[2] All further statutory references are to the Civil Code, unless otherwise indicated.

13

*1. Procedural Unconscionability*

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] Arbitration contracts imposed as a condition of employment are typically adhesive [citations] . . . ." *(Kho, supra,* 8 Cal.5th at p. 126.) There is no reasonable debate that the contract here is a contract of adhesion. It was presented to Beco with the choice to either sign it or face termination of his employment. The agreement itself states it was "a condition of, . . . your employment or continued employment." There is also no question that Fast Auto was the party with superior bargaining power.

Once a contract is found to be adhesive, "[t]he pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. [Citations.] ""*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form.'"""" *(Kho, supra,* 8 Cal.5th at p. 126.)

Fast Auto chooses to focus on the "surprise" element (unsurpringly). Fast Auto argues that it submitted evidence to the trial court that all employees were sent an e -mail notifying them they had a task to complete. Although the e-mail did not mention arbitration or an agreement, Fast Auto implies this was sufficient advance notice of the agreement. According to Beco's undisputed declaration, he did not review the agreement until May, some two months after Fast Auto claims he was given notice of it. At that time, Beco states, he was pressured into signing numerous documents without a chance to review them. Although Fast Auto argues that "[n]obody was breathing down his neck or threatening to fire him if he did not immediately comply," they did not offer the declaration of anyone who was present and could explain the circumstances under which

14

Beco electronically signed the agreement. Only Beco's testimony that he felt pressured to sign immediately was before the trial court, which found Beco's statements credible. This unchallenged testimony constituted substantial evidence. We therefore find at least a moderate degree of surprise.

Fast Auto does not much analyze oppression, the other element of procedural unconscionability.[3] Oppression is a separate factor from whether the agreement was adhesive, and it concerns negotiation and meaningful choice. (See *Kho*, *supra*, 8 Cal.5th at p. 126; *Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1319-1320.) "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.'" (*Kho*, *supra*, 8 Cal.5th at pp. 126-127.)

Even if we accept Fast Auto's argument[4] that Beco had months to review the agreement, when it came to its execution, it was undisputed that in May 2016, he was pressured to electronically sign a number of documents and threatened with termination if he did not do so. His review of the agreement, which was reasonably complex in the eyes of a layperson, was not aided by an attorney. Given that Beco started his

---

[3] Fast Auto focuses almost exclusively on the trial court's analysis, but under the substantial evidence standard of review, our attention is directed to whether there was sufficient evidence to uphold the court's ultimate ruling, not its particular reasoning.

[4] Fast Auto claims that Beco's declaration is essentially irrelevant, because he does not specifically recall electronically signing the agreement, but discussed signing numerous documents shortly after Fast Auto's ownership changed. Given the lack of evidence that Beco was required to electronically sign numerous other documents at a different time, which Fast Auto did not offer, we reject this contention.

15

employment at the wage of $13.50 an hour, we find no evidence that he was a legally sophisticated individual.

"[E]conomic pressure can also be substantial when employees are required to accept an arbitration agreement in order to *keep* their job. Employees who have worked in a job for a substantial length of time have likely come to rely on the benefits of employment. For many, the sudden loss of a job may create major disruptions, including abrupt income reduction and an unplanned reentry into the job market. In both the prehiring and posthiring settings, courts must be 'particularly attuned' to the danger of oppression and overreaching." (*Kho*, *supra*, 8 Cal.5th at p. 127.)

Given the pressure on Beco to sign the agreement or lose his job, the agreement's complexity in the eyes of a layperson, and the lack of attorney assistance to review it, we find the oppression here significant, and overall, the amount of procedural unconscionability to be moderate.

### 2. *Substantive Unconscionability*

While procedural unconscionability focuses on how the agreement was obtained and executed, "[s]ubstantive unconscionability examines the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ""overly harsh""' [citation] "'unduly oppressive'" [citation], "'so one-sided as to "shock the conscience"'" [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that the unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party."'" (*Kho*, *supra*, 8 Cal.5th at pp. 129-130.)

Although Beco's lawsuit includes other claims, several of his causes of action, including racial discrimination, racial harassment, and retaliation, arise under FEHA. Under *Armendariz,* compulsory arbitration of FEHA claims is not per se

16

unconscionable so long as the arbitration agreement: "'(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or *any* arbitrators' fees or expenses as a condition of access to the arbitration forum.'" (*Armendariz*, *supra*, 24 Cal.4th at p. 102, italics added.)

The trial court identified numerous factors it deemed substantively unconscionable, including requiring the plaintiff to bear his own "'attorney, expert and witness fees and expenses,'" exposing the plaintiff to liability for arbitration costs after the first day, shortening the limitations period to three months, and failing to guarantee any discovery.

As to the limitations period and fee-shifting provisions, Fast Auto argues that all of these provisions are acceptable, because even though they might run afoul of the law when applied to FEHA claims, the agreement included a provision that required the arbitrator to tailor the remedy to governing law. The trial court, contends Fast Auto, was required to harmonize the agreement's provisions, citing Code of Civil Procedure section 1859, which states that "when a general and particular provision are inconsistent, the latter is paramount to the former." Further, Fast Auto claims that the provision specifically regulating fees, costs, and remedies is the "general" provision, whereas the statement that the arbitrator shall apply the governing substantive law and award all remedies that could be awarded by a court is the "specific" provision. This is, of course, backwards. The provision regarding the arbitrator's powers is the general provision, and the provisions limiting specific types of recovery and the limitations period are the specific ones. Further, Fast Auto did not only attempt to limit Beco's recovery of attorney fees in his FEHA claims, but also his claims under the Labor Code, some of which also include attorney fee-shifting provisions (see Lab. Code, § 218.5), and to impose arbitration costs on Beco in violation of *Armendariz.*

17

Arguments similar to those advanced by Fast Auto have been rejected before, including in a case where the arbitration provision at issue stated that each party is "'responsible for your own attorneys' fees.'" (*Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 235.) Like the agreement here, the arbitration rules in *Carbajal* stated: "'The arbitrators will be entitled to award all types of relief that would otherwise be available to the parties in a court proceeding under State or Federal law.'" (*Id.* at p. 251.)

The plaintiff subsequently sued the defendant for numerous Labor Code violations, and the court rejected the same argument Fast Auto offers here: "According to [the defendant], the rules of contractual interpretation require us to read these two provisions together so as to require each party to be responsible for their own attorney fees unless a statute otherwise allows the prevailing party to recover its attorney fees. (See §§ 1643, 3541.) We disagree and find this proffered interpretation to be contrary to the parties' intent as expressed in the arbitration provision's clear and unambiguous language." (*Carbajal v. CWPSC, Inc.*, *supra*, 245 Cal.App.4th at p. 251.) "The arbitration provision's plain language requires the parties to be responsible for their own attorney fees without any exceptions. Nothing in the provision's language suggests the parties intended to limit or qualify this provision by also granting the arbitrators broad authority to award all types of relief authorized by law. '[W]hen there are conflicting clauses the more specific clause controls the more general.' [Citation.] [The defendant] may not avoid the consequences of its deliberate choice to limit its employees' statutory right to attorney fees by advancing an interpretation contrary to the plain language of the arbitration agreement it drafted. Indeed, other courts have rejected similar arguments seeking to avoid the conclusion that an arbitration provision that alters a party's statutory right to attorney fees is substantively unconscionable." (*Id.* at pp. 251-252.)

The same is true here. There is no ambiguity and nothing to harmonize. The agreement's intent is clear. Fast Auto cannot avoid the consequences of its plainly stated intent to limit not only the recovery of attorney fees on many of Beco's causes of

18

action, but also to shift the cost of arbitration to him after one day and to deny him the right to recover statutory costs.

Fast Auto next claims that finding a provision unconscionable due to "ambiguity" or "contra proferentum" are preempted by the Federal Arbitration Act. But neither ambiguity or interpretation against the drafter are at issue here. As Fast Auto pointed out mere paragraphs earlier in its brief, this is a question of interpreting specific and general provisions in a contract under state law, which does not place any additional burden on arbitration agreements. Because these provisions attempt, in an entirely one-sided manner, to limit Beco's remedies and to shift the cost of arbitration, the trial court correctly decided these provisions are substantively unconscionable.

Additionally, we find the limitations period set forth in the agreement – three months – particularly onerous. The agreement provides that "[t]he aggrieved party must give written notice of any claim to the other party within three (3) months of the date the aggrieved first knew or should have known of the facts giving rise to the claim; otherwise, the claim shall be void and deemed waived." By contrast, an administrative claim under FEHA must be filed within one year. (Gov. Code, §§ 12960, subd. (d), 12965, subd. (b).) Shortened limitations periods in arbitration agreements are not inherently unconscionable, but they must be reasonable. (*Ellis v. U.S. Security Associates* (2014) 224 Cal.App.4th 1213, 1225.) """"A contractual period of limitation is reasonable if the plaintiff has a sufficient opportunity to investigate and file an action, the time is not so short as to work a practical abrogation of the right of action, and the action is not barred before the loss or damage can be ascertained."""" (*Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 731.) Limitations periods of six months on FEHA claims have been found to be unreasonable. (*Ellis v. U.S. Security Associates*, *supra*, 224 Cal.App.4th at p. 1225.) Three months, accordingly, is not a sufficient amount of time to investigate and file an action, or to vindicate Beco's rights under FEHA or his other claims, all of which have the same or longer limitations periods.

19

That leaves us with discovery. While Fast Auto correctly points out that limitations on discovery are not inherently unconscionable, this provision did not place reasonable limitations on discovery. The agreement stated "[t]he arbitrator *shall have the authority* to allow for appropriate discovery and exchange of information before a hearing, including but not limited to production of documents, information requests, depositions, and subpoenas." (Italics added.) Although Fast Auto now claims discovery would proceed according to AAA rules, there is no mention of AAA rules in this subparagraph. Indeed, by its plain language, the subparagraph puts the issue of whether to allow discovery or not entirely in the arbitrator's hands, which distinguishes this case from those cited by Fast Auto. (See, e.g., *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1475-1476 [agreement specifically stated arbitration would be conducted under AAA rules, and included no additional discovery limitations].) Giving the arbitrator unfettered discretion over how much discovery does or does not take place is inconsistent with allowing more than minimal discovery, which is required for FEHA claims. (*Armendariz*, *supra*, 24 Cal.4th at p. 102.)

While Fast Auto claims Beco has made no affirmative showing that he cannot vindicate his rights without a guarantee that he can conduct any discovery, such a showing is unnecessary when the agreement's discovery provision runs afoul of *Armendariz*. Further, given the particular language at issue here, such a showing is self-evident. "[S]ome discovery is often necessary for vindicating a FEHA claim." (*Armendariz*, *supra*, 24 Cal.4th at p. 106.)

Taken together, the fee and cost-shifting limits, the restriction on limitations periods, and the limits on discovery create substantial substantive unconscionability. These provisions are entirely one-sided and serve to benefit only Fast Auto, not its employees. The removal of statutory fee-shifting provisions undoubtedly makes it more difficult to find an attorney willing to take an employee's case. The removal of the ability to recover costs, including expert witness costs, makes pursuing a

20

case more difficult and expensive for the employee. Potentially shifting all the costs of arbitration to the employee after one day creates uncertainty and leaves the employee wondering if he or she could wind up even worse off than before because he or she tried to seek the protection of the law. The limitations on discovery – indeed, the prospect that no discovery at all might be allowed – make it that much harder for an employee to meet his or her burden of proof before an arbitrator. And the incredibly short limitations period, anywhere from months to years shorter than the statutory equivalent, can leave an employee with no relief at all. When added to the adhesive nature of the agreement and the oppression present in its execution, we find the trial court had substantial evidence from which it could determine the entire agreement was unconscionable and unenforceable.

*Severance*

Fast Auto argues that even if certain provisions were unconscionable, they should have been severed from the arbitration agreement.

Section 1670.5, subdivision (a) provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." As noted above, we review the trial court's decision to sever or not to sever unconscionable provisions for abuse of discretion. (*Armendariz*, *supra*, 24 Cal.4th at pp. 121-125; see *Baxter v. Genworth North America Corp.*, *supra*, 16 Cal.App.5th at p. 722.)

"The overarching inquiry is whether '"the interests of justice . . . would be furthered"' by severance." (*Armendariz*, *supra*, 24 Cal.4th at p. 124.) Here, for the same reasons as in *Armendariz*, it would not. There are multiple substantively unconscionable provisions. In addition to the one-sided fee-shifting provisions, the agreement included a

21

limitations period so restrictive and onerous that it could only have been included to dissuade employees from attempting to vindicate their rights. "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage. In other words, given the multiple unlawful provisions, the trial court did not abuse its discretion in concluding that the arbitration agreement is permeated by an unlawful purpose." (*Ibid.*) The same is true here, and accordingly, we find no abuse of discretion in the trial court's decision not to sever the numerous unconscionable provisions.

## III

## DISPOSITION

The order is affirmed and the case is remanded for further proceedings. Beco is entitled to his costs on appeal.

MOORE, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

SANCHEZ, J.

Filed 12/14/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BERNELL GREGORY BECO, | G059382 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 30-2019-01103112) |
| FAST AUTO LOANS, INC., | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendant and Appellant. | |

Attorney Eliza Duggan from UC Berkeley School of Law, Center for Consumer Law & Economic Justice, has requested that our opinion, filed on November 17, 2022, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2). The request is GRANTED.

The opinion is ordered published in the Official Reports.


MOORE, ACTING P. J.

I CONCUR:


SANCHEZ, J.